UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HAMID HAJEBIAN, | § § | |
| Plaintiff, | § § | Case No: |
| v. | § § | |
| CREDIT UNION OF TEXAS, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff HAMID HAJEBIAN ("Hajebian"), by and through his undersigned counsel, files this complaint against Defendant CREDIT UNION OF TEXAS ("Defendant"), and states:

**I.**

**PRELIMINARY STATEMENT**

1. Hajebian, an individual who is deaf, brings this action against Credit Union of Texas. Credit Union of Texas discriminated against Hajebian by refusing to provide qualified sign language interpreters and by refusing to accept his telecommunications relay service calls. As a result of Credit Union of Texas' discriminatory actions, Hajebian does not have the same opportunities as similarly situated hearing individuals to contact and communicate with Credit Union of Texas. Defendant's conduct violated and continues to violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and Texas Human Resources Code § 121.001, *et seq*. Defendant also breached an arbitration agreement between the parties by failing to comply with the requirements for the American Arbitration Association to accept the case, forcing Hajebian to refile in federal court. Hajebian brings this issue to compel the Credit Union of Texas to cease unlawful discriminatory practices and implement policies and procedures that will ensure

effective communication, equal access, and an equal opportunity for him to participate in and benefit from Credit Union of Texas' banking and financial services. Further, Hajebian seeks compensatory damages, attorneys' fees, and costs.

## II.

### PARTIES

2. Hajebian resides at 13728 Wickham Lane, Frisco, TX 75035.

3. Credit Union of Texas is a financial institution with more than $2 billion in assets serving more than 150,000 members in all 50 states. Credit Union of Texas has a principal place of business at 900 W. Bethany Drive, Suite 500, Allen, TX 75013. Credit Union of Texas' registered agent is Angela Faust at 900 W. Bethany Drive, Suite 500, Allen, TX 75013.

## III.

### DEFENDANT DEFAULTS AT ARBITRATION

4. Individuals doing business with the Credit Union of Texas are subject to the terms and conditions set forth in an account agreement drafted by the Credit Union of Texas.

5. The account agreement has a section titled "Binding Arbitration Consent and Agreement."

6. The arbitration clause contained therein provides that disputes may "be resolved by BINDING ARBITRATION administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules"), whether such Claim is in contract, tort, statute, or otherwise."

7. Accordingly, on November 13, 2023, Hajebian filed a demand for arbitration with the American Arbitration Association.

8. Hajebian paid the applicable fees for the arbitration.

9. Hajebian also sent a copy of the arbitration demand to the Credit Union of Texas.

10. On or about December 18, 2023, the American Arbitration Association declined to administer arbitration because Credit Union of Texas "failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, and/or removed themselves from the Consumer Clause Registry." A copy of this letter is attached as Exhibit A to this Complaint.

11. Pursuant to the Federal Arbitration Act, Credit Union of Texas is in default in the arbitration proceeding and Hajebian is lawfully entitled to commence this federal court action.

### IV.

#### JURISDICTION AND VENUE

12. Hajebian's claims arise under the ADA, 42 U.S.C. § 12181, *et seq*. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(4).

13. This Court has supplemental jurisdiction over Hajebian's state-law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper because the events giving rise to this lawsuit occurred within this District and Division and Defendant is located in this District.

### V.

#### FACTUAL ALLEGATIONS

15. Hajebian is deaf. He is substantially limited in the major life activities of hearing and speaking.

16. In 2022, Hajebian took out a home equity loan through Credit Union of Texas.

17. During the process of taking out a home equity loan, Hajebian notified Credit Union of Texas that he is deaf and requested that the Credit Union of Texas provide a qualified interpreter for the closing. In response, the Credit Union of Texas said it would "take care of it."

18. Credit Union of Texas did not provide a qualified interpreter for the closing on the home equity loan which took place on or about June 8, 2022.

19. As a result of the Credit Union of Texas' failure to provide a qualified interpreter for the closing, Hajebian was forced to call his son through FaceTime and ask his son to facilitate communication between him and the employees for the Credit Union of Texas.

20. Although Hajebian's son knows some sign language, his son lacks the training and specialized vocabulary to interpret effectively, and Hajebian did not have access to effective communication during the closing.

21. It was clear to the Credit Union of Texas's agents and/or employees during the closing that Hajebian is deaf and was not able to engage in effective communication without appropriate auxiliary aids and services.

22. Subsequent to the closing, Hajebian continued to have questions as a result of the lack of qualified interpreters during closing.

23. Because Hajebian is deaf, he uses a Video Relay Service (VRS) to place telephone calls.

24. VRS is a form of Telecommunications Relay Service (TRS), regulated by the Federal Communications Commission (FCC). According to the FCC, VRS "enables persons with hearing disabilities who use American Sign Language to communicate with voice telephone users through video equipment, rather than through typed text. Video equipment links the VRS user with a communications assistant, or CA, so that the VRS user and the CA can see and communicate

4

with each other in signed conversation." The CA acts as a sign language interpreter between the individual with a disability and the voice telephone user. *See* Federal Communications Commission, Video Relay Services, *available at* https://www.fcc.gov/consumers/guides/video-relay-services (last visited on Jan. 8, 2024).

25. The FCC has promulgated regulations requiring communications assistants to maintain strictly confidential any information exchanged during relay calls and prohibiting communications assistants from changing the content of the message in any manner. *See* 47 C.F.R. § 64.604(a)(2).

26. Over the summer of 2022, Credit Union of Texas accepted Hajebian's VRS call. Due to a lack of effective communication with Credit Union of Texas during the closing, Hajebian had misunderstood the payment date for the first payment. When he was finally able to obtain information about the payment due date over VRS, it was too late to make a timely payment. Hajebian was still subject to a late fee that was assessed to his account.

27. Subsequently, however, Credit Union of Texas refused Hajebian's VRS calls on at least three occasions, depriving and continuing to deprive Hajebian of effective communication.

28. For instance, on or about April 26, 2023, Hajebian called Credit Union of Texas again because he was confused about the interest rate on his loan and why the amount due each month kept changing. He also had questions about the amount due on the loan and how to pay down the principal. That day, however, Credit Union of Texas refused to accept his relay call.

29. Hajebian put Credit Union of Texas on written notice that he suffered discrimination and requested that Credit Union of Texas modify its policies to accept relay calls from deaf individuals on the same basis as telephone calls from individuals without disabilities.

30. In response, on or about May 3, 2023, Credit Union of Texas stated in written correspondence that it will not accept Hajebian's VRS calls unless he first provides proof in person that he has a disability and that a relay service is necessary to communicate over the telephone.

31. Credit Union of Texas does not require individuals without disabilities to submit any documentation or paperwork prior to communicating with them over the telephone.

32. Credit Union of Texas' policy of requiring individuals with hearing or speech disabilities to submit documentation in order to be able to place a telephone call is discriminatory against individuals with such disabilities.

33. As a result of the Credit Union of Texas' policies, Hajebian remains unable to place a telephone call to ask questions about his home equity loan.

34. Hajebian has suffered emotional distress including embarrassment, frustration, humiliation as a result of Defendant's failure to provide a qualified interpreter for the closing and refusal to communicate with him through a relay service.

35. Hajebien has also suffered economic damages, including but not limited to late payment fees when Defendant failed to provide the necessary qualified interpreters to ensure effective communication about the terms and conditions of the home equity loan including the applicable payment due dates.

36. Hajebian continues to have questions about his home equity loan and anticipates having questions from time to time in the future for which he anticipates placing telephone calls to Credit Union of Texas, or needing to meet with Credit Union of Texas employees in person with an interpreter present.

37. Hajebian was harmed when Credit Union of Texas failed to comply with the arbitration clause of the account agreement. The harm includes but is not limited to the time and

expense in filing for arbitration, the delay of the resolution of claims, and the resulting frustration and aggravation as a result of the delay and having to refile his complaint.

## VI.

CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

38. Hajebian repeats and realleges all paragraphs in support of this claim.

39. Hajebian is substantially limited in the major life activities of hearing and speaking and is therefore an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2).

40. Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

41. Title III of the ADA prohibits discrimination on the basis of disability in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any places of public accommodations . . . ." 42 U.S.C. § 12182(a).

42. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer an unequal or separate benefit to individuals with disabilities. A public accommodation is required to administer its programs and activities in the most integrated setting appropriate to meet the needs of qualified individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A) and (B); 28 C.F.R. §§ 36.202; 36.203.

43. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation must take reasonable modifications in policies, practices, or procedures, when

necessary to ensure access for people with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

44. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and series to ensure effective communication with individuals with disabilities. This includes "voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices." 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

45. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation must accept "telecommunications relay service established under title IV of the ADA in the same manner that it responds to other telephone calls." 28 C.F.R. § 36.303(d)(4).

46. Credit Union of Texas has discriminated against Hajebian on the basis of his disability by refusing to accept his relay calls necessary to ensure effective communication, equal access, and an equal opportunity to participate in and benefit from Credit Union of Texas' services in violation of Title III of the ADA, 42 U.S.C. §§ 12181-12189.

47. Credit Union of Texas has discriminated and continues to discriminate against Hajebian on the basis of his disability by denying him equal participation in the services, programs, and benefits Credit Union of Texas offers to other individuals, and by refusing to reasonably modify its policies, practices, or procedures to accept relay calls, in violation of Title III of the ADA, 42 U.S.C. § 12182.

48. Credit Union of Texas harmed and continues to harm Hajebian who has suffered injury and incurred costs because of the unlawful acts of Credit Union of Texas.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE TEXAS HUMAN RESOURCES CODE § 121.001, *et seq.*

49. Hajebian repeats and realleges all paragraphs in support of this claim.

50. Hajebian is a person with a disability because he has a "hearing impairment" and/or "deafness". Tex. Hum. Res. Code § 121.002(4)(C), (D).

51. Credit Union of Texas is a "public facility" subject to Chapter 121 of the Texas Human Resources Code. Tex. Hum. Res. Code § 121.002(5).

52. Tex. Hum. Res. Code § 121.003(a) provides that "[p]ersons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state."

53. Tex. Hum. Res. Code § 121.003 defines discrimination to include the failure to "make reasonable accommodations in policies, practices, and procedures" or "provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility." Tex. Hum. Res. Code § 121.003(d).

54. Credit Union of Texas has discriminated against Hajebian on the basis of his disability by refusing to accept his relay calls necessary to ensure effective communication, equal access, and an equal opportunity to participate in and benefit from Credit Union of Texas' services.

55. Credit Union of Texas has discriminated and continues to discriminate against Hajebian on the basis of his disability by denying him equal participation in the services, programs, and benefits Credit Union of Texas offers to other individuals, and by refusing to reasonably modify its policies, practices, or procedures to accept relay calls.

56. Credit Union of Texas was on notice of Hajebian's request and need for auxiliary aids and services and reasonable modifications, yet failed to take the steps necessary to ensure that such auxiliary aids and services and reasonable accommodations were provided.

57. Credit Union of Texas harmed and continues to harm Hajebian who has suffered injury and incurred costs because of the unlawful acts of Credit Union of Texas.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

58. Hajebian repeats and realleges all paragraphs in support of this claim.

59. Credit Union of Texas has an adhesive contract that Hajebian was required to agree to in order to take out a home equity loan.

60. The adhesive contract contains an arbitration clause.

61. The clause provided in relevant part that any dispute may "be resolved by BINDING ARBITRATION administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules"), whether such Claim is in contract, tort, statute, or otherwise."

62. On or about November 13, 2023, in compliance with this arbitration agreement, Hajebian filed with the American Arbitration Association a complaint against Credit Union of Texas.

63. On or about December 18, 2023, the American Arbitration Association declined to administer arbitration because Credit Union of Texas "failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the

Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, and/or removed themselves from the Consumer Clause Registry."

64. As a result of Credit Union of Texas' breach of the contract that it had itself drafted, Hajebian was harmed.

65. The harm includes but is not limited to the time and expense in filing for arbitration, the delay of the resolution of claims, and the resulting frustration and aggravation as a result of the delay and having to refile his complaint.

## VI.

### JURY TRIAL DEMAND

66. Plaintiff hereby demands a trial by jury.

## VII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hamid Hajebian respectfully requests that the Court award the following relief be awarded:

(a) A declaration that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act, and Tex. Hum. Res. Code § 121.001, *et seq.*;

(b) An injunction prohibiting Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Hajebian, equal access to and an equal opportunity to participate in and benefit from Defendant's services or programs;

(c) An injunction prohibiting Defendant from implementing or enforcing any policy, procedure, or practice that limits or restricts individuals who are deaf or hard of hearing, such as Hajebian, from using relay calls to communicate with Defendant;

(d) An injunction requiring Defendant to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Hajebian or other individuals with hearing or speech impairments;

(e) An injunction requiring Defendant to provide qualified interpreters on request when necessary to ensure effective communication with Hajebian and similarly situated individuals who are deaf or hard of hearing;

(f) An injunction requiring Defendant to accept and place telecommunications relay calls in the same manner than it does voice telephone calls;

(g) An injunction requiring Defendant to train all representatives and employees about Hajebian's rights and the rights of individuals who are deaf, hard of hearing, or have speech impairments, as well as provide training on Defendant's policies and procedures on providing qualified interpreters and accepting relay calls;

(h) An injunction requiring Defendant to list on its website the its procedures and policies for requesting qualified interpreters and communicating with individuals with disabilities through relay services.

(i) Monetary damages, including but not limited to statutory, compensatory, and/or nominal damages;

(j) Reasonable costs and attorneys' fees;

(k) Interest, including prejudgment interest, at a legal rate; and

(l) Any and all other relief that the Court finds necessary and appropriate.

Date: January 15, 2024	Respectfully submitted,

_/s/ S. Tomiyo Stoner_
S. Tomiyo Stoner
UNDAUNTED LAW FIRM, P.C.
5960 Berkshire Lane
Sixth Floor, 05-0127
Dallas, Texas 75225
T: (844) 232-4332
tstoner@undauntedlaw.com

*Counsel for Plaintiff*